## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL BURRAGE, | ) | CASE NO. 4:10CV2755 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| FEDEX FREIGHT, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of plaintiff Nathaniel Burrage ("plaintiff" or "Burrage") to alter or amend the Court's March 29, 2012 Memorandum Opinion granting the summary judgment motion of Defendant FedEx Freight, Inc. ("Defendant" or "FedEx"). (Doc. No. 37.) FedEx opposes the motion. (Doc. No. 39.) The matter has been fully briefed and is ready for resolution.

### BACKGROUND

The facts surrounding this case have been set forth in the Court's March 29, 2012 Memorandum Opinion, familiarity with is presumed. To adequately frame the issues presented in Burrage's motion, it is sufficient to provide a condensed version of the relevant facts. Burrage brought suit in state court against FedEx, maintaining that he had been subjected to a hostile work environment, on the basis of race and color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Ohio Rev. Code § 4112.01 *et seq.* On December 3, 2010, the matter was removed to this Court.

At all times relevant to the complaint, Burrage was employed by FedEx, in various capacities, as a truck driver. In his complaint, Burrage alleged that he is an "individual of African American descent who has been deprived of state and federal rights on the basis of his race or color . . . ." (Doc. No. 1-1 at 1.) Burrage, who identifies himself as half African-American and half Caucasian, testified at this deposition that his supervisor, Dennis Jamiot ("Jamiot"), repeatedly referred to him as "Mexican" and "cheap labor," and used terms "andale, andale" and "arriba" in his presence. (Burrage Dep. 114:1-117:2.) When Jamiot inquired into Burrage's race, Burrage informed him that he had a black father and a white mother and that he was not Mexican. (*Id*. at 116:3-8, 144:6-18.) Jamiot advised Burrage that he thought Burrage looked Mexican. (*Id*. at 144:12.)

In response to Jamiot's observation, Burrage volunteered a story about his ex-girlfriend who had wanted to introduce him to her family as "Mexican" rather than "black," suggesting to Jamiot that his ex-girlfriend's attitude was "messed up." (*Id.* at 144:19-145:9.) According to Burrage, he shared the story to impress upon Jamiot how offended he was by being called "Mexican," when in fact he was of mixed descent. It did not have the desired effect, as Jamiot continued to call him "Mexican." (*Id*. at 118:21-119:1.) In fact, Burrage testified that other supervisors and co-workers eventually joined in the harassment, utilizing the same crude and offensive stereotypes originally employed by Jamiot and often associated with people of Mexican descent. (*Id.* at 133:18-22.)

Following a period of discovery, FedEx moved for summary judgment. After the issues were fully briefed, the Court rendered its decision. (Doc. No. 35.) In its Memorandum Opinion, filed March 29, 2012, the Court dismissed both the federal and

2

the state hostile work environment claims. In so ruling, the Court found that, even when the evidence was viewed in a light most favorable to Burrage, he could not establish that he was subjected to unwelcome racial or color-related harassment. The Court further found that FedEx could successfully rely on the viable and unrebutted defense that it neither condoned nor tolerated the alleged harassment.

## STANDARD OF REVIEW

Federal Rules of Civil Procedure 59(e) provides that a party may move a court to alter or amend its judgment within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e). A district court may grant a Rule 59(e) motion only if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). Plaintiff seeks an amendment to the Court's judgment on the fourth ground; namely, to correct what he perceives as manifest injustice. Relief under Rule 59(e) represents an extraordinary remedy and is to be sparingly granted in light of the interests of repose and conservation of scarce judicial resources. *Plaskon Elec. Materials, Inc. v. Allied Signal*, 904 F. Supp. 644, 669 (N.D. Ohio 1995). A motion under Rule 59(e) is not a substitute for an appeal, nor does it provide an opportunity to re-argue a case. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). "Thus, parties should not use [it] to raise arguments which could, and should, have been made before judgment issued." *Id*. With these legal considerations in mind, the Court turns to plaintiff's motion.

**ANALYSIS**

    A.    <u>Harassment Based on Race or Color</u>

Plaintiff maintains that the Court's Memorandum Opinion erroneously attributed to him a position that he had not advanced in this litigation; namely, that he was discriminated against on the basis of a perception by his supervisors and co-workers that he was Mexican. Noting that the complaint alleges a hostile work environment based on his race (African American) and skin color (black), plaintiff argues that the Court improperly ruled that the essence of Burrage's harassment claim was that he was perceived as being of Hispanic descent. Plaintiff has misrepresented the Court's ruling.

The Court properly observed that the complaint raised only claims for hostile environment harassment based on race and skin color. (*See* Doc. No. 35 at 8 n.3 ["While it is not entirely clear from [d]efendant's motion and supporting briefs, it would appear that [d]efendant believes that Burrage has raised a claim of national origin discrimination. A fair reading of the [c]omplaint reveals that Burrage intended only to raise race and color discrimination as a basis for his hostile work environment clams."]) Had plaintiff been defending a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, his complaint allegations of race and color harassment would have been sufficient to stave off dismissal. However, the matter came before the Court upon FedEx's motion for summary judgment. Under Rule 56, plaintiff could not rest on the complaint allegations, but was required to come forward with specific facts showing a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986) (quotation and citation omitted) (the non-moving party may not rest on the pleadings, but

4

must produce evidence showing that there is a genuine issue of material fact for trial); *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992); *see also Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.")

While Burrage may have *plead* race and color-based harassment, he failed to come forward with any evidence that he had been harassed on the basis of his race or color. Instead, his evidence was confined to instances where he was allegedly subjected to ethnic slurs clearly associated with individuals of Hispanic descent. Specifically, the Court found:

> At best, the references to Burrage as "the Mexican" and "cheap labor," and the use of the Spanish terms "andale" and "ariba," represent the very unfortunate employment of offensive stereotypes of Hispanics, and can be said to arise out of a misperception that Burrage was of Hispanic descent; or at worst, they amount to incomprehensible name calling. They cannot reasonably be considered to have referred to the fact that Burrage's race was African-American or that his skin color was brown, notwithstanding Burrage's conclusory allegations to the contrary. *See, generally, Lee v. United States Postal Serv.*, 12 F. App'x 322, 323 (6th Cir. 2001) ("Mere conclusory allegations of discrimination are insufficient to state a claim under Title VII.") (citing *Allen v. Michigan Dep't of Corrs.*, 165 F.3d 405, 413 (6th Cir. 1999)).

(Doc. No. 35 at 10-11, footnote omitted.)

The Court concluded that, to the extent that Burrage was attempting to sustain claims of race and color-based harassment, his claims failed because he was unable to point to any evidence that would have demonstrated that the harassment had a

race or color-related character or purpose.[1] (*Id.* at 14-15) *See Watkins v. Tex. Dep't of Crim. Justice,* No. 06-20843, 269 F. App'x 457, 464 (5th Cir. 2008) (citing *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) (affirming the district court's grant of summary judgment to the employer on race discrimination claim, noting that the plaintiff was attempting to "impart a racial character" to certain non-race related claims)); *see also Gilbert v. Country Music Ass'n, Inc.*, No. 09-6398, 432 F. App'x 516, 520 (6th Cir. 2011) (internal quotation and citation omitted) (Plaintiff could not "bootstrap protection for sexual orientation into Title VII under the guise of a sex-stereotyping claim."); *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 753 (S.D. Ohio 2011) (sexual harassment claim did not survive summary judgment because the only incident of harassment identified was not based on the plaintiff's sex). The Court also ruled that, to the extent that plaintiff's evidence supported a claim for perceived national origin discrimination, such a claim was not recognized under Title VII or Ohio Rev. Code § 4112. *See Butler v. Potter*, 345 F. Supp. 2d 844, 850 (E.D. Tenn. 2004) ("Title VII protects those that belong to a protected class, *see* 42 U.S.C. § 2000e-2(a)(1), and says nothing about protection of persons who are *perceived* to belong to a protected class."); (Doc. No. 35 at 9 [collecting cases].)

---

[1] The only evidence that even remotely touches upon plaintiff's race or color involved the incident where Jamiot inquired into plaintiff's race. This one event—which, in and of itself, contained no derogatory harassment—is insufficient to establish the existence of a hostile work environment based on race or skin color. *See, e.g., Vallecillo v. U.S. Dep't of Housing and Urban Dev.*, No. 05-50238 Summary Calendar, 155 F. App'x 764, 767 (5th Cir. 2005) (finding two derogatory references to plaintiff's protected status were not sufficiently severe or pervasive to create a hostile work environment).

Plaintiff does not appear to challenge the Court's ruling that the protections of Title VII do not extend to persons who are merely "perceived" to belong to a protected class. Nor does he suggest that the teasing he endured in the work-place could not have been born out of a mistaken perception that he was Mexican. Instead, he argues that, once he shared the story involving his ex-girlfriend, he "cleared up" any misconception as to his national origin. Specifically, plaintiff contends that "[w]hat became abundantly clear following this revelation was that *Burrage was not Mexican and did not care for a term mischaracterizing and impunging [sic] the reasons for his skin color, one of which was attributable [to] the color of his father*." (Doc. No. 37 at 2 [emphasis in original].)

Actually, what is clear is that Burrage is attempting to do indirectly what he cannot do directly. That his skin color may have lent support for individuals to perceive him as Mexican (or, at least, provided a basis for teasing him about such ancestry), does not transform evidence of perceived national origin discrimination and general teasing into evidence of racial or color-related discrimination.[2] *See, generally, Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996) ("race and national origin are ideologically distinct under Title VII"). Indeed, it is often the case that one's personal characteristics factor into the perception of others. *See, e.g., Butler*, 345 F. Supp. 2d at 850 (plaintiff's prominent nose contributed to the

---

[2] As set forth more fully in its summary judgment ruling, Burrage's situation is not comparable to those where an employee is subject to discrimination but, due to overlap between race and ethnicity, the employee cannot determine whether it is his membership in a racial category versus his national origin that is the impetus for the discrimination. *Compare Deravin v. Kerik,*, 335 F.3d 195, 202 (2d Cir. 2003). "Even if the Court were to characterize the discrimination as racial, the record would not bear out that Burrage was harassed on the basis of *his* race (African-American)." (Doc. No. 35 at 13 n.6.)

7

mistaken perception that he was Arab). Still, it is the ethnic slurs and epithets that plaintiff offers as evidence of an alleged hostile environment, and not evidence of racial animus.[3]

Moreover, the fact remains that the same teasing took place after Plaintiff's "revelation," as Jamiot and others continued to use the same ethnic terms, including "the Mexican." Notwithstanding plaintiff's clarification as to his race and color, the teasing and harassment to which plaintiff was subjected did not take on a racial or color related tone. *Compare Wiltz v. Christus Hosp. St. Mary*, No. 1:09CV925, 2011 U.S. Dist. LEXIS 44893, at *33 (E.D. Tex. Mar. 10, 2011) (recommending the denial of summary judgment of a color-related race claim because comments, such as "the blacker the berry, the sweeter the juice," had a color-related character or purpose), *adopted by, and summary judgment for employer on the hostile work environment claim denied at*, No. 1:09CV925, 2011 U.S. Dist. LEXIS 44891 (E.D. Tex. Apr. 25, 2011).

If anything, the fact that his supervisors and co-workers continued to employ the same ethnic slurs after plaintiff disavowed them of the notion that he was Mexican takes plaintiff's evidence even further beyond the protections of Title VII, as it amounts to mere teasing.[4] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and

---

[3] Plaintiff previously raised the argument that "but for" his race and skin color, Burrage's supervisors would never have used ethnic slurs. *See Clay v. UPS*, 501 F.3d 695, 706 (6th Cir. 2007) ("Conduct that is not explicitly race-based may be illegally race-based and properly considered in a hostile-work-environment analysis when it can be shown that but for the employee's race, [he] would not have been the object of harassment.") In rejecting the argument, the Court observed that: "[w]hile the "but for" test permits a plaintiff to rely on discrete acts not clearly indicative of racial animus to support a race claim where others outside the protected class are treated differently, it stretches the test too far to suggest that comments that are clearly based on a different type of discrimination (here, national origin discrimination) can be relied upon to support a race or color claim, in the absence of racially charged comments or evidence that white employees were subjected to different treatment." (Doc. No. 35 at 12.)

8

conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988). "Title VII was not meant to create a 'general civility code,' and the 'sporadic use of abusive language, . . . and occasional teasing' are not sufficient to establish liability." *Clark v. UPS*, 400 F.3d 341, 352 (6th Cir. 2005). "[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee, does not sufficiently affect conditions of employment to implicate Title VII." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)).

When considered in a light most favorable to plaintiff, the evidence only shows that Jamiot teased him initially because he may have perceived Burrage to be Hispanic, and later Jamiot and others in the workplace teased Burrage because they found it funny that someone would want to introduce him as Mexican, or that they simply thought it was funny to compare him to Mexicans. This evidence fails to demonstrate a triable issue over whether Burrage was subjected to a hostile workplace on the basis of his race and/or color. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011) (only harassment "based on the plaintiff's race may be used" to support the existence of a racially charged hostile work environment). Consequently, plaintiff's first argument fails to show a manifest injustice that would warrant the alteration of the Court's judgment.

---

[4]Plaintiff suggests that if the teasing is not considered racial in nature, the terms used by Jamiot and co-workers are rendered "meaningless and nondescript." (Doc. No. 37 at 3.) Plaintiff is wrong, as these terms have no relation to race. In fact, the circumstances surrounding Jamiot's continued use of these disparaging remarks supports a finding that Jamiot was simply comparing plaintiff to individuals of Hispanic descent. For example, according to plaintiff, Jamiot referred to plaintiff as "our Mexican" when Jamiot found that plaintiff had taken a break from his work to tell a co-worker a personal story. (Burrage Dep. 141:8-142:13.) Though cruel and unjustified, some small-minded people have often stereotyped Mexicans as lazy or unmotivated. *See, e.g., Nieto v. Kapoor*, 268 F.3d 1208, 1213 (10th Cir. 2001) (In action brought under 42 U.S.C. § 1983, judgment for former Hispanic state employees subjected to hostile work environment affirmed where supervising physician referred to Mexicans as "stupid" and "lazy."); *Escalante v. IBP, Inc.*, 199 F. Supp. 2d 1093, 1100-01 (D. Kan. 2002) (use of ethnic epithets, including "lazy Mexican wetback bastard" sufficient to defeat employer's summary judgment motion on hostile work environment claim.)

B.  FedEx's Unrebutted Affirmative Defense

Burrage also takes issue with the Court's determination that summary judgment for FedEx was appropriate because FedEx neither condoned nor tolerated the alleged harassment. Even when the existence of an actionable hostile work environment can be established, an employer may avoid liability by demonstrating that (1) it exercised reasonable care to prevent and correct promptly any discriminatory or harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.[5] *Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998). The Court found that FedEx had promulgated an anti-harassment policy, whereby an employee could report discriminating or harassing conduct to a supervisor directly, or through use of the company's Alert Line. The undisputed evidence showed that Burrage never availed himself of the hotline, and the vague complaints he made to various supervisors over the years regarding working conditions did not constitute sufficient notice to FedEx under the policy.[6] The Court concluded that "[n]one of [Burrage's complaints to management] is clear enough for an employer to ascertain that plaintiff was complaining about anything more than ordinary uncomfortable work situations or teasing that had crossed a line, as opposed to harassment or discrimination." (Doc. No. 35 at 18.)

---

[5] Where a supervisor is the harasser, this particular defense is only available to the employer if the conduct does not include an adverse employment action. *See Collette v. Stein-Mart, Inc.*, No. 03-2101, 126 F. App'x 678, 682 (6th Cir. 2005) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998)). Here, plaintiff did not argue that the alleged harassment was accompanied by an adverse employment action.

[6] For example, Burrage testified that he complained to one supervisor, Jim Kuffman, "that Youngstown isn't a great place to be," that it is "horrible," and that he did not "like the way they treated me there." (Burrage Dep. at 197:22-24; *see* Doc. No. 35 at 461 [collecting other "subtle, cryptic hints" by Burrage that he found the workplace unpleasant].)

Burrage suggests that the Court erred "in failing to recognize the active component of the *Ellerrth/Faragher* affirmative defense[.]" (Doc. No. 37 at 3.) In particular, Burrage contends that FedEx was not entitled to the affirmative defense unless it also demonstrated that "it acted reasonably by preventing and correcting harassing conduct." (*Id*. at 4.) Focusing on an incident in 2006 when he re-told the story of his ex-girlfriend to supervisor Andy Yost, Burrage highlights the fact that he informed Yost that it bothered him that his ex-girlfriend considered introducing him to her parents as someone of Hispanic descent. According to Burrage, he re-told the story to Yost immediately after Yost allegedly heard Jamiot refer to Burrage as "our Mexican." (Burrage Dep. at 141:8-142:13.) Burrage argues that Yost was "duty bound" to report the alleged harassment immediately, and his failure to do so deprives FedEx of the benefit of its affirmative defense.

Though set forth in its recitation of the facts, the Court did not specifically reference this particular "complaint" in its analysis of FedEx's affirmative defense. Nonetheless, the Court considered the entire record (including this alleged incident) before it concluded that none of Burrage's complaints would have put FedEx on notice that Burrage was reporting discriminatory or harassing conduct. In fact, the incident involving Yost underscores the deficiencies of Burrage's alleged complaints. Burrage expected Yost to interpret the story involving his ex-girlfriend as an affirmative representation by Burrage that he believed that he was being subjected to a hostile *work* environment. No reasonable employer would be able to make that leap of logic. Because Burrage's conversation with Yost would not have alerted management to possible harassment, FedEx had no duty (or opportunity) to take corrective action. *See Davis v.*

11

*Monsanto Chem. Co.*, 858 F.2d 345, 350 (6th Cir. 1988) ("because [the employer] cannot be charged with actual or constructive knowledge of [the alleged harassing behavior], it cannot be held liable for tolerating this alleged harassment").

## CONCLUSION

Ultimately, the Court finds that plaintiff has failed to offer a single argument in his Rule 59(e) motion that would justify disturbing the Court's ruling on summary judgment. Burrage's motion to alter or amend the judgment is, therefore, **DENIED**.

**IT IS SO ORDERED**.

Dated: December 28, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**